STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Heffernan, <u>et</u> }
<u>al.</u> }
} Docket No. 170-8-00 Vtec
}
}

<u>Decision and Order on Cross-Motions for Summary Judgment</u>

Appellants Gerald Heffernan, William Reuschel, David Williams, Madeline Davis, Chris Rockwood, Eric Furnholm, and Kim Farnham appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Bristol approving with conditions an application for a conditional use and change of a non-conforming use filed by Cross-Appellant Jolley Associates. Cross-Appellant appealed the denial of a canopy for the project. Appellants are represented by Jon Anderson, Esq.; Cross-Appellant is represented by Howard J. Seaver, Esq.; the Town is represented by Amanda S.E. Lafferty, Esq.

Appellants' amended statement of questions raises three issues: 1) whether the proposal is an allowed or a conditional use, or not allowed at all; 2) whether the site plan satisfies the landscaping requirement; and 3) whether the proposal should be approved, if at all, as a conditional use or an enlargement or extension of non-conforming uses. Appellants and Cross-Appellant have each moved for summary judgment on Questions 1 and 2 of Appellants' statement of questions.

Cross-Appellant' s statement of questions raises three issues: 1) whether the area under the canopy is included when calculating the required number of parking spaces under § 611; 2) whether the proposed canopy requires separate conditional use approval under § 1008 and § 341 of the Zoning Regulations; and 3) whether the proposed canopy has an adverse impact on the character of the area. Cross-Appellant has moved for summary judgment on Questions 1 and 2 of Cross-Appellant' s statement of questions. The Town has also moved for summary judgment on Question 2 of those questions.

The following facts are undisputed unless otherwise noted.

Cross-Appellant owns a 16,609-square-foot[1] corner lot located on the northeast corner of Munsill Avenue and West Street in the Town' s Residential/Office-Commercial (ROC) Zoning District. The lot has 100 feet of frontage along West Street and 157 feet of frontage along Munsill Avenue; those measurements are the corresponding lot depths back from each of the roadways, as it is a corner lot. The lot is adjoined by residential properties on its northerly and easterly[2] boundaries, as well as across Munsill Avenue. A wooden fence, approximately six feet high, runs along the easterly and northerly boundaries, shielding the lot from view from the ground level of the adjoining residential parcels. The property across West Street slopes steeply downwards from West Street and is not developed.

Since before the adoption of zoning bylaws by the Town in 1968, this lot has been in use as a gasoline station and motor vehicle repair facility, including the sale of snack foods and beverages, as well as the sale of items related to vehicle maintenance and repair. Also since before the adoption of zoning bylaws, the lot has been almost entirely covered with pavement or gravel where not otherwise developed with buildings or gasoline pump islands. The lot contains a preexisting building approximately 1,288 square feet in area, which houses the repair facilities and the retail uses. The building is located approximately 60 feet from the center of West Street and approximately 54 feet from the center of Munsill Avenue. It is located approximately 95 feet from the northerly property line and approximately 26 feet from the easterly property line. The retail use occupies a room comprising about one-third of the existing building. Four gasoline dispensing units with a total of eight fueling positions are located on two existing islands. One island is located approximately 30 feet from the center line of Munsill Avenue, and the other is located approximately 38 feet from the center line of West Street. The associated underground gasoline storage tanks are not at issue in this appeal, although it is not clear to the Court how gasoline delivery trucks access the fill pipe for the underground tanks, either at present or as proposed. Existing access to the property is by one curb cut on West Street and two curb cuts on Munsill Avenue.

A gasoline or motor vehicle service station is neither an " of-right" use nor a conditional use in the ROC zoning district. Therefore, the present use of the property is a pre-existing, non-conforming use of the property, governed by § 512 of the Zoning Regulations. Section 550(a) of the Zoning Regulations applies in the four zoning districts defined by § 210 with asterisks as formerly comprising the village district: now the High Density Residential, Low Density Residential, Neighborhood Commercial, and Residential/Office-Commercial zoning districts. It requires that " [w]here any non residential uses in a district abuts any residential use in a district, a strip of land at least twenty-five feet in width shall be maintained as a landscaped area in the front, side, or rear yards which abut the residential district." For this section to have any meaning, the final word must be interpreted to be residential " use" rather than residential " district." This section applies to Cross-Appellant' s property as to the northerly, easterly, and westerly boundaries of that property, because it is a non-residential use which abuts a residential use. However, as the non-residential use of the property and the lack of landscaping predate the adoption of § 550(a), Cross-Appellant' s property is a pre-existing non-conforming property with respect to this provision.

The lot otherwise meets the lot area minimum, lot frontage minimum, and lot depth minimum for a non-residential use in the ROC zoning district[3]. The existing building and gasoline pump islands meet the lot coverage of less than 30%, as lot coverage is not defined to include paved area, but only to include buildings. The existing building meets the required front yard setbacks of 40 feet to the centers of Munsill Avenue and West Street, and meets the required side yard setbacks of 10 feet to the adjoining property lines. The existing gasoline pump islands do not meet those front setbacks, but under the regulations they do not appear to be required to do so, since front setback is defined only with relations to " buildings" and neither the islands nor the pump structures fall within the definition of building. Accordingly, the existing structures do not require analysis as non-conforming structures.

In April of 2000, Cross-Appellant filed an application, including a site plan, for a conditional use permit under § 1008(B)(2)(i) to build a convenience store, and for a change to a nonconforming use under § 512 to modernize its gas station facility.

Cross-Appellant proposes to discontinue automotive repairs at the facility. Cross-Appellant proposes to demolish the existing building and to construct a new one 32' x 72' in size, or 2,304 square feet in area, in a location approximately 46 feet from the center of Munsill Avenue, 23 feet from the northerly property line and 11 feet from the easterly property line. The new building would be used for gasoline sales and as a retail store in which less than 50% of the stocked items would be food or beverages.

Cross-Appellant also proposes to remove the existing gasoline pumps and to install two new pumps (for a total of four fueling stations) in a new location, proposed to be covered by a 24' x 52' canopy on which the " Exxon" logo will appear. The canopy is proposed to be located approximately 61 feet from the center of West Street and approximately 51 feet from the center of Munsill Avenue. Vehicular access to the property is proposed by a single driveway from West Street and a single driveway from Munsill Avenue. The proposed additional landscaping consists of four crab apple trees to be placed on the northerly side of the property; the existing fence will remain. A dumpster is proposed to be located to the rear of the building, less than 10 feet from the property line, screened by the existing fence. The site plan also includes light poles and a pole-mounted sign. The site plan shows sixteen off-street parking spaces, of which four are located at the fueling stations.

The Zoning Regulations define the use category " gasoline or motor vehicle service station" in § 130 as " [a]ny lot or area of land, including the building or buildings thereon, which is used for the sale of fuel, lubricant or accessories for motor vehicles; or which has commercial facilities for lubricating, washing, painting, repairing, or servicing motor vehicles." The use category " retail store" is defined as " [a]ny enclosed business concerned primarily with the sale of produce, products, goods, equipment or commodities," but the definition goes on specifically to exclude " gasoline or motor vehicle service station," among other uses, from the definition of a " retail store." Thus, whether or not a particular gasoline station also sells non-automotive items does not remove it from the use category of " gasoline or motor vehicle service station." Indeed, under these definitions, even an automobile parts store would fall into the use category of " gasoline or motor vehicle service station" rather than that of a " retail store," despite the fact that it neither sells gasoline nor services motor vehicles.

Therefore, we need not determine whether a portion of Cross-Appellant' s proposed use qualifies as a " retail store" under the § 130 definitions, nor whether it falls within or outside of the subcategory of " retail store" defined as a " food/beverage" store. As long as the proposed use of the lot also includes the sale of gasoline, the whole use on the lot falls within the use category of " gasoline or motor vehicle service station."

However, nothing in the definition or elsewhere in the Zoning Regulations precludes a business which fits within the definition of " gasoline or motor vehicle service station" from selling other items as well. Rather, the Zoning Regulations require that the particular restrictions applicable to

a gasoline station use[4] must apply to such a business, regardless of the proportion of automotive-related items sold by the business.

Similarly, we need not allocate the canopy to the gasoline use or to the convenience store use. The canopy is an additional building on the lot, as the term " building" is defined under the Zoning Regulations, as it has a roof supported by columns and intended as shelter, just as a carport is defined as a building. It must meet the setback, lot coverage and other building-related requirements of the Zoning Regulations.

Cross-Appellant proposes 16 parking spaces[5], which is one more than the number required by the three employees plus one for every 200 square feet of the gross floor area of the convenience store building. However, 21 spaces would be required if the area under the canopy must also be included in the gross floor area calculation of the required number of parking spaces. Section 611 specifies the off-street parking requirements " for every building hereafter erected, altered, extended or changed in use." Cross-Appellant argues that the bylaws cannot rationally include a canopy in the calculation of parking requirements, because its function is simply to shelter already-existing parking; to do so would mean that a parking lot without a roof would have no minimum parking requirement, while with a roof it would, although its function would not change.

Although the canopy is a building as defined in the Zoning Regulations, and must meet height and setback requirements, the area under the canopy need not be included in calculating the parking requirements for the proposed project, for two reasons: because its function is to shelter off-street parking spaces rather than to create space with an independent demand for parking spaces, and because it has no " floor area" as that term is defined in the regulations, because floor area is measured between the interior faces of the walls.

In the ROC district a " gasoline or motor vehicle service station" use is neither an " of-right" use nor a conditional use. Therefore, Cross-Appellant' s entire application should have been considered (and approved or rejected in whole or in part) under § 512 as a movement, extension or enlargement of a pre-existing non-conforming use, and not under the conditional use standards of § 1008. Accordingly, the application for the canopy and the new building must be remanded to the ZBA for consideration under the proper standard. Only the change in the location of the gasoline pumps appears to have been considered under § 512, and need not be reconsidered in the proceedings on remand.

Accordingly, based on the foregoing, Summary Judgment is GRANTED in favor of Appellants on Question 1 of their Amended Statement of Questions: the project is not an ' of-right' or conditional use in the ROC zoning district. It must be reviewed under the standards of § 512 as a movement, extension or enlargement of a pre-existing non-conforming use.

Summary Judgment is GRANTED in favor of Appellants on Question 2 of their Amended Statement of Questions in that § 550 does apply to the project property; however, as the existing lack of landscaping in those areas is grandfathered, any landscaping must be reviewed under the standards of § 512 in connection with the proposed movement, extension or enlargement of a pre-existing non-conforming use.

Summary Judgment is GRANTED in favor of Cross-Appellants on Question 1 of their Statement of Questions: the area under the canopy need not be counted in determining the number of off-street parking spaces required by § 611.

Summary Judgment is GRANTED in favor of Cross-Appellants on Question 2 of their Statement of Questions: the proposed canopy does not require conditional use approval; however, it must be reviewed under the standards of § 512 as a movement, extension or enlargement of a pre-existing non-conforming use.

It appears to the Court that Question 3 of Appellants' Amended Statement of Questions, and Question 3 of Cross-Appellant's Statement of Questions are moot or at least premature, pending the outcome of the remanded proceedings, or that the only remaining issues regarding the relocation of the gasoline pumps under § 512 should be considered together with any appeal that may result from the remanded proceedings. We will hold a telephone conference on Friday, September 28, 2001 at 1:00 p.m. to discuss the appropriate disposition of this case. The Court will place the call.

Done at Barre, Vermont, this 24th day of September, 2001.

_____
Merideth Wright
Environmental Judge

## Footnotes

[1.] We note for the parties' future reference that the fact sheets provided with the application by Cross-Appellant's engineer for calculations of setbacks, frontage, lot size, lot depth, lot coverage, floor area, building area, and number of employees have not been submitted to the Court with the application, although most are stated on the site plan.

[2.] Jolley and Madeline Davis, one of the Appellants, dispute the easterly boundary of the lot, which separates their properties. However, the proposal before the Court does not extends to the disputed portion of the property.

[3.] It does not meet the more stringent requirements for lot size, frontage, pump location, fuel storage, number of access driveways, and landscaping for gasoline station lots required by §522. However, by its terms that section only applies in districts in which a gasoline service station use is a conditional use.

[4] Not only the specific restrictions in §522, but also whether a "gasoline or motor vehicle service station" use is categorized as a permitted or conditional use in any particular district.

[5] Appellants argue that the spaces at the pumps cannot be counted as the required parking spaces. But they provide parking for the limited time that a motorist is engaging in the gasoline-service function of the facility. There is no reason in the Zoning Regulations why they cannot be counted under §611.